# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 12-782V
(Filed: July 7, 2014)
### NOT TO BE PUBLISHED

* * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| KENDRA IANNOTTI, | * | |
| | * | Special Master Corcoran |
| Petitioner, | * | |
| | * | |
| v. | * | Vaccine Act Interim Fees and Costs; |
| | * | Withdrawal of Counsel |
| SECRETARY OF HEALTH AND | * | |
| HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

*Ronald C. Homer*, Conway, Homer & Chin-Caplan, P.C., Boston, MA, for Petitioner

*Gordon Elliot Shemin*, U.S. Dep't of Justice, Washington, DC, for Respondent

## DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

In this case under the National Vaccine Injury Compensation Program (hereinafter the "Vaccine Program"), Petitioner Kendra Iannotti requests, pursuant to 42 U.S.C. § 300aa-15(e), an interim award for attorneys' fees and costs incurred by her counsel in attempting to obtain Program compensation. After careful consideration, I have decided to grant the request for the reasons set forth below.

---

[1] Because this decision contains a reasoned explanation for my action in this case, it will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the posted decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public. (*Id).*

# BACKGROUND

*Petitioner's Medical History*

On November 13, 2012, Ms. Iannotti, as a *pro se* litigant, filed a petition under the Vaccine Program alleging that she had developed Guillain-Barré syndrome ("GBS") after receiving the influenza ("flu") vaccine on August 19, 2011 (Pet. at 1; Ex. 10). As the medical records filed in the case indicate, Ms. Iannotti presented to Yale-New Haven Hospital on December 5, 2011, at which time she described to her treating physicians "a history of [one] month of progressive muscle weakness" ascending from her legs to her arms. (Ex. 4 at 52; Ex. 9 at 413).

The results of tests performed on Ms. Iannotti at Yale Hospital were consistent with GBS and diabetic polyradiculoneuropathy. (Ex. 9 at 486). Ms. Iannotti was discharged from Yale to Gaylord Hospital in Wallingford, Connecticut on December 9, 2011 with a presumptive diagnosis of post-vaccination GBS versus diabetic polyradiculoneuropathy (taking into account Ms. Iannotti's reported prior history of Type 1 diabetes). (Ex. 4 at 52-53, 56-57, and 63-64). Treating physicians considered the flu vaccine a potential trigger for Petitioner's presumed GBS. (Ex. 4 at 56, 63-64). The notes of some treating physicians suggest that, at the outset of diagnosing Ms. Iannotti, they deemed GBS unlikely because the onset of her symptoms was too long after she had received her flu vaccination, and because she denied any antecedent viral infections. (Ex. 9 at 413).[2] GBS was later favored as the most likely diagnosis, however, due to Petitioner's overall presentation. (*Id.* at 485-86).

Ms. Iannotti's subsequent medical history is inconclusive as to whether her illness was in fact GBS related to her August 2011 vaccination. Thus, there are suggestions in the record that the diagnosis of polyradiculoneuropathy attributable to diabetes was the more accurate one.[3] Confirmation of that diagnosis depended on results from an autoimmune blood panel. (Ex. 4 at 197). But Petitioner was later discharged from Gaylord on December 24, 2011 without a definitive diagnosis and with the results of that blood panel test still pending. (*Id.* at 4, 221). Ultimately, Ms. Iannotti's medical records from January 6, 2012 reflect a persistent diagnosis of GBS. (Ex. 9 at 562).[4]

---

[2] In a treating physician's differential diagnosis from December 6, 2011, the possibility that Ms. Iannotti had a cyst that became infected was also referenced as a possible trigger for her suspected GBS (Ex. 9 at 443). Ms. Iannotti was treated for a pilonidal cyst on October 26, 2011; though no signs of infection were found, a high risk of infection was noted. (*Id.* at 999, 1017).

[3] Ms. Iannotti's December 9, 2011 Gaylord admission form specifically indicates the view of the admitting physician that polyradiculoneuropathy was more likely than GBS. (Ex. 4 at 14). Similarly, Gaylord records from December 12, 2011 state, without elaboration, "LE poliradiculo-neuropathy: presumably from diabetes and/or demyelinating process. Doubt GBS." (Ex. 4 at 197).

[4] Only the notes of one record physician, Dr. Boroumand, from July 26, 2012 suggest that GBS was not properly diagnosed. (Ex. 9 at 1036). Dr. Boroumand appears to have reviewed Petitioner's chart and concluded that her symptoms were at best "certainly consistent" with GBS. *Id.* This record was later signed by Dr. Oray-Schrom, the attending physician throughout Petitioner's December 2011 hospitalization at Yale. (*Id.* at 408, 536, 1036-37).

After Ms. Iannotti's December 2011 GBS diagnosis, the medical records indicate that she continued to suffer from chronic pain and weakness. (Ex. 9 at 1053). Tests to determine the cause of these chronic symptoms are mentioned in the filed records, although the records appear incomplete because they do not set forth the results of such tests. (*Id.* at 1056, 1085, 1151). Also mentioned but missing from the record are a neurology appointment in February 2012, blood tests conducted on March 21, 2012, and EMG[5] and nerve conduction studies ordered on April 20, 2012. *See Id.* As of July 2013, Petitioner's medical history includes "[GBS status post] flu vaccine." (*Id.* at 2676). There is no present record of further tests to determine the etiology of her illness.

*Procedural History*

After filing the petition on her own and representing herself in this matter for several months, Ms. Iannotti retained attorney Ronald C. Homer, who appeared in the action on her behalf on April 8, 2013. (ECF No. 9). With Mr. Homer's aid Ms. Iannotti obtained by subpoena various medical records to support her claim. (*See* ECF Nos. 14 and 18). Ten such exhibits were filed in December 2013 (Exs. 1-10; ECF No. 21), although Petitioner later reported that, based on review of these records, she was aware that her filed medical records were incomplete (*see* March 5, 2014 Status Report (ECF No. 27)).

As of January 2014, Ms. Iannotti was reporting to this forum her expectation that she would soon be filing a Statement of Completion, thus triggering the date for the Respondent's Rule 4(c) Report. (*See* January 6, 2014 Status Report (ECF No. 24)). However, in her very next status report, Petitioner stated that her counsel had determined that he would be withdrawing from the action entirely. (ECF No. 27). Mr. Homer has since filed motions both to withdraw as counsel (motion dated May 15, 2014 (ECF No. 34)) and also for an interim award of attorneys' fees (motion dated April 24, 2014 (ECF No. 30) ("Fee App.")). The former motion specifically states that Ms. Iannotti now intends to revert to her original *pro se* status. (ECF No. 34 at 1).

Petitioner's present application for interim fees and costs seeks (a) an award of $14,494.50 in fees, and (b) $2,448.41 in interim costs, for a total of $16,942.91. (Fee App. at 1). Although Respondent opposed the application on May 12, 2014 ("Fee App. Opp."), arguing that an award of interim fees is not appropriate at this stage because the Petitioner failed to demonstrate undue hardship as required by *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343 (Fed. Cir. 2008), she expressly does not challenge most of the sum requested – nor does she question whether the claim has a reasonable basis or was asserted in good faith. (Fee App. Opp.

---

[5] EMG refers to electromyography, "an electrodiagnostic technique for recording the extracellular activity (action potentials and evoked potentials) of skeletal muscles at rest, during voluntary contractions, and during electrical stimulation." *Dorland's Illustrated Medical Dictionary* 602 (32d ed. 2012).

at 3 n.2 and 4 n.3).[6] Petitioner subsequently replied on May 15, 2014, arguing that interim fees are appropriate in this case. ("Reply"). This matter is therefore ready to be decided.[7]

## ANALYSIS

I.   Legal Standard for Award of Attorneys' Fees

Special masters are required to award reasonable attorneys' fees and litigation costs for Vaccine Act claims which successfully demonstrate a petitioner's entitlement to compensation. *See* § 300aa-15(e)(1). But special masters may also, in the exercise of their discretion, award attorneys' fees and litigation costs to unsuccessful litigants as long as the petition was (a) filed in good faith and (b) with a reasonable basis. *Id.* Whether a petitioner was successful or not, special masters have the discretion to determine what constitutes a reasonable amount for fees and costs. *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372, 1377 (Fed. Cir. 2010); *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1520 (Fed. Cir. 1993); *Friedman v. Sec'y of Health & Human Servs.*, 94 Fed. Cl. 323, 332 (Fed. Cl. 2010); *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 31 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994); *Saunders v. Sec'y of Health & Human Servs.*, No. 90-826V, 1992 WL 700268, at *1 (Cl. Ct. Spec. Mstr. May 26, 1992), *aff'd*, 26 Cl. Ct. 1221 (1992), *aff'd*, 25 F.3d 1031 (Fed. Cir. 1994).[8]

Petitioner has the burden to demonstrate that requested attorneys' fees are reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 215 (2009); *Rupert v. Sec'y of Health & Human Servs.*, 52 Fed. Cl. 684, 686 (2002); *Wilcox v. Sec'y of Health & Human Servs.*, No. 90-991V, 1997 WL 101572, at *4 (Fed. Cl. Spec. Mstr. Feb. 14, 1997). The same burden applies to justifying requests for an award of costs. *Perreira*, 27 Fed. Cl. at 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). Requests for interim awards, as is the case here, must satisfy the same good faith and reasonable basis requirements applicable to the fee requests of unsuccessful petitioners. *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1375; *Franklin v. Sec'y of Health & Human Servs.,* No. 99-0855V, 2009 WL 2524492, at *4 (Fed. Cl. Spec. Mstr. July 28, 2009).

Although Respondent takes pains to reiterate her objection to the awarding of interim fees, controlling decisions of the Federal Circuit clearly permit the recovery of interim fees and costs in Vaccine Act cases. *Avera*, 515 F.3d at 1352; *Cloer v. Sec'y of Health and Human Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012); *McKellar v. Sec'y of Health and Human Servs.*, 101 Fed.

---

[6] Respondent has no objection to the total sum of costs requested, but only with respect to $14,214.50 of the total amount of $14,494.50 requested – meaning Respondent objects to $280 of the total fee application. (Fee App. Opp. at 4 n.3).

[7] Petitioner has also filed a supplemental motion for the $567.10 in fees incurred in briefing the Fee Application. *See* May 15, 2014 Supplemental Motion (ECF No. 33). Respondent never objected or responded to the supplemental motion, and (for the same reasons stated above with respect to Petitioner's initial fee application) I am including these additional sums in the total fee award.

[8] In this decision, I reference or rely upon both the decisions of special masters as well as the judges of the Court of Federal Claims, all of which constitute persuasive, but not binding authority. *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998). By contrast, Federal Circuit decisions are binding on special masters. *Guillory v. Sec'y of Health & Human Servs.*, 59 Fed. Cl. 121, 124 (2003), *aff'd*, 104 Fed. App'x 712 (Fed. Cir. 2004).

Cl. 297, 302 (2011) ("interim fees are permitted even before an entitlement decision is made"). The *Avera* court followed the Supreme Court's construction of other fee-shifting statutes, which also allow the award of interim fees in appropriate circumstances. *Avera*, 515 F.3d at 1351-52. In fact, the *Avera* court determined that the justification for an award of interim fees is *greater* in Vaccine Act cases because the Act does not have a "prevailing party" requirement (and thus petitioners can obtain fee awards even where they do not establish entitlement to a damages award), and because the underlying purposes of the Vaccine Act are better served if petitioners have access to competent legal representation – a goal that is aided if attorneys appearing for petitioners in the Program have assurances that their fees will be satisfied. *Id*. at 1352; *see also* H.R. Rep. No. 99-908 at 22 (1986).

*Avera*, however, did not define the circumstances in which an interim award might appropriately be issued – leading other special masters to observe that the standards for granting an interim fee award "remain somewhat muddled." *Small v. Sec'y of Health & Human Servs.,* No. 02-1616V, 2014 WL 308297, at *1 (Fed. Cl. Spec. Mstr. Jan. 7, 2014), *citing Shaw*, 609 F.3d at 1375. Thus, although the *Avera* court identified certain conditions under which an interim fee award may be appropriate, such as "where proceedings are protracted and costly experts must be retained" (*Id*. at 1352), the case has been interpreted as allowing special masters broad discretion in awarding interim fees. *See, e.g., Kirk v. Sec'y of Health & Human Servs.,* No. 08-241V, 2009 WL 775396, at *1 (Fed. Cl. Spec. Mstr. Mar. 13, 2009) (reading *Avera* to establish a "broad, discretionary vehicle for ensuring that petitioners are not punished financially while pursuing their vaccine claim"); *Bear v. Sec'y of Health & Human Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013) (*Avera* provides only "*examples* and *general guidance* concerning when interim fees and costs might be awarded, leaving the special masters *broad discretion* to consider many factors in considering whether an interim award is appropriate in a particular case") (emphasis in the original).

Since *Avera*, there has been a considerable amount of case law discussing when interim fee awards are appropriate. In some cases, interim awards have been granted after taking into account the amount of time that has passed in the case as well as the amount of work performed. *See, e.g., Franklin* 2009 WL 2524492, at *4 (awarding interim fees where the petition had been pending for years, petitioner's counsel had paid significant amounts to experts, and the final resolution of the case was likely to take some time); *MacNeir v. Sec'y of Health & Human Servs.*, No. 03-1914V, 2010 WL 891145, at *1-4 (Fed. Cl. Spec. Mstr. Feb. 12, 2010) (granting an interim award of fees and costs of $12,062 when counsel had expended most of the costs and fees while obtaining and filing medical records). But there is no defined period of time that must have passed from the time a petition was filed to justify an interim fee award. *See, e.g., Bear*, 2013 WL 691963 at *4-5 (interim fee awarded when case was pending for nineteen months); *Broekelschen v. Sec'y of Health & Human Servs.*, No. 07-137V, 2008 WL 5456319, at *2-3 (Fed. Cl. Spec. Mstr. Dec. 17, 2008) (interim fees awarded when case was pending for less than one year).

II.     The Criteria for an Attorneys' Fee Award are Satisfied

In this case, I find that both the general criteria required to obtain a fee award where no entitlement decision has been made – good faith and reasonable basis - are satisfied.[9] First, the petition appears to have been brought in good faith. As discussed in *Lamar v. Sec'y of Health & Human Servs.*, No. 99-584V, 2008 WL 3845157 (Fed. Cl. Spec. Mstr. July 30, 2008), a determination of good faith can be made at the start of the case, and is the more easily established of the two factors. *See also Austin v. Sec'y of Health & Human Servs.,* No. 10-0362V, 2013 WL 659574, at *7 n.20 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) ("[d]ue to its subjective nature, the standard for good faith is very low").[10] Analyzing it "requires a special master to delve into the circumstances surrounding the filing of the petition, rather than rely on its content." *Lamar*, 2008 WL 3845157, at *3. Thus, good faith has been found even when petitioner's counsel did not file the petition with any medical records, given evidence that the petitioner honestly believed that he had suffered a vaccine related injury and that he had a claim. *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).

Ms. Iannotti has established she received the flu vaccine. (Ex. 10). Her records further memorialize that she did in fact visit the hospital several weeks after receiving the vaccine, and that her treating physicians voiced the suspicion that the vaccine might have played a role in her GBS-like symptoms. Because there is no other evidence of misrepresentation by the Petitioner, I conclude that the Petitioner has fulfilled the good faith requirement.

Second, I find that there is a reasonable basis for Ms. Iannotti's claim. Determining whether reasonable basis exists involves application of an objective test that can be satisfied by providing or pointing to evidence supporting the existence of a relationship between the vaccination and the alleged injury. *Franklin*, 2009 WL 2524492 at *4; *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Reasonable basis does not look at the likelihood of the claim's success, but at the feasibility of the claim. *Id.*; *see also Turner*, 2007 WL 4410030 at *6 ("[c]ounsel may file a claim on grounds that are reasonable but ultimately are determined not to merit Program compensation.").[11]

---

[9] As noted above, Respondent does not dispute either Petitioner's good faith or reasonableness. Fee App. Opp. at 3 n.2. That fact, however, does not deprive me of the general discretion to evaluate the appropriateness of a fee award request. *Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 218 (2008) (special master did not abuse her discretion in reducing portion of fee application not otherwise objected to by Respondent).

[10] Indeed, some cases have asserted that good faith should be presumed. *See, e.g., Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996).

[11] There is no explicit instruction from the Federal Circuit as to the precise nature of the evidentiary burden imposed on a petitioner attempting to establish reasonable basis. Other special masters have considered whether a claim has support in the contemporaneous medical records, a medical opinion, or if the petitioner can demonstrate at least that "fundamental inquiries" were made to locate evidentiary support for the claim. *Melbourne v. Sec'y of Health & Human Servs.*, No. 99-694V, 2007 WL 2020084, at *6 (Fed. Cl. Spec. Mstr. June 25, 2007) (petitioner cannot obtain fee award once reasonable basis ceases to exist, based upon counsel's awareness that the medical record or expert opinion fails to support the claim); *Di Roma*, 1993 WL 496981 at *2.

Although in the history of the Program special masters have tended to be "quite generous in finding a reasonable basis for petitioners" when granting fee awards in unsuccessful cases, that generosity wanes where it is evident that counsel failed to investigate sufficiently the facts underlying the claim. *Riley v. Sec'y of Health & Human Servs.*, No. 09-276V, 2011 WL 2036976, at *3 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citation omitted); s*ee also Murphy v. Sec'y of Health & Human Servs.*, 30 Fed. Cl. 60, 62 (1993) (affirming denial of attorneys' fees where contemporaneous records provided no basis for alleged injury), *aff'd*, 48 F.3d 1236 (Fed. Cir. 1995); *Di Roma*, 1993 WL 496981, at *3 (denying attorneys' fees and costs where "[m]inimal research and good sense should have indicated that th[e] case had no basis under the law"). Thus, proof of an adequate investigation into a claim's viability also can persuasively establish reasonable basis.

Here, the record presents sufficient proof for me to determine that reasonable basis exists (at least as of this date).[12] The medical records filed in this case substantiate that Ms. Iannotti's treating physicians initially opined that there was likely a relationship between the vaccine she received and her subsequent illness. Those records were obtained with Mr. Homer's assistance shortly after his appearance in this case in April 2013. This is therefore not a case in which counsel was on notice at the outset of his engagement that little evidence supported Ms. Iannotti's otherwise good faith contentions that a vaccine had injured her.

It may well be that Petitioner's case is not likely to be successful in the long run. Petitioner's case is complicated by her uncertain diagnosis, and the fact that her ongoing GBS-like symptoms may be more appropriately attributable to her preexisting diabetes. More fundamentally, and as some of the initial treatment records suggest, the apparent November onset of Petitioner's illness may be too attenuated in time from her August vaccination to satisfy the third prong of the causation test set forth in *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278-9 (Fed. Cir. 2005).[13]

But the reasonable basis test should not be confused with a petitioner's ultimate, and heavier, burden of proof in a Program case – which is to prove causation by a preponderance of the evidence. *Moberly v. Sec'y of Health & Human Servs.,* 592 F.3d 1315, 1321 (Fed.Cir.2010) (petitioner is required to prove that the vaccine was "not only [the] but-for cause of the injury but also a substantial factor in bringing about the injury") (*quoting Shyface v. Sec'y of Health & Human Servs.,* 165 F.3d 1344, 1352–53 (Fed.Cir.1999)). An interim fee award request should therefore not be declined simply because it "seems" as if the Petitioner is likely to lose, as long as this sense of weakness in the underlying claim is not glaringly evident from the record. *Compare Austin*, 2013 WL 659574, at *11 (finding reasonable basis until petitioner failed to obtain a favorable expert opinion when one medical record from one treating physician

---

[12] Reasonable basis can fluctuate during the course of a proceeding, such that a claim that has sufficient reasonable basis at the time of its filing can "lose" that status if evidence later comes to light undermining the claim. *See, e.g.*, *Perreira*, 33 F.3d at 1377 ("when the reasonable basis that may have been sufficient to bring the claim ceases to exist, it cannot be said that the claim is maintained in good faith").

[13] In *Althen*, the Federal Circuit set forth a three-pronged test for causation, in which the petitioner must establish (1) a medical theory causally connecting the vaccination to the injury (*i.e.*, that the vaccine "can cause" the injury); (2) a logical sequence of cause and effect showing the vaccination was the reason for the injury (*i.e.*, that in this case the vaccine "did cause" the injury); and (3) a proximate temporal relationship between the vaccination and the injury. *Althen*, 418 F.3d at 1278-9.

supported vaccine causation), *and Sease v. Sec'y of Health & Human Servs.*, No. 11-228V, 2012 WL 5921066, at \*9 (Fed. Cl. Spec. Mstr. Nov. 6, 2012) (same when treating physicians noted a "potential" vaccine injury*), with Cortez v. Sec'y of Health & Human Servs.*, No. 09-176V, 2014 WL 1604002, at \*9 (Fed. Cl. Spec. Mstr. Mar. 26, 2014) (finding no reasonable basis when there was no documentation that petitioner received the alleged vaccination); *and Schmidt v. Sec'y of Health & Human Servs.*, No. 11-401V, 2012 WL 1392632, at \*1 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (no reasonable basis when petitioner did not receive a vaccine listed on the Vaccine Injury Table). To so act would make the reasonable basis test more stringent than it should be.

Here, I find that Mr. Homer acted reasonably in representing Ms. Iannotti (originally a *pro se* litigant) for the 12 to 13-month period in which he appeared as counsel of record, helping her advance her claim in ways she might have found difficult on her own. Nor does the magnitude of the fee request seem excessive, especially given the context of this case. Accordingly, Petitioner has established grounds for a fee award generally.


III.   Overall Appropriateness of Interim Fee Award

As noted above, and separate from exercising my discretion to decide whether the nature of an underlying claim and counsel's pursuit of it make a Petitioner eligible for an attorneys' fee award *at all*, I must also determine whether to award fees on an interim basis. Respondent argues against an interim fee award by calling for a narrow interpretation of *Avera*. Fee App. Opp. at 3.

I do not find such arguments persuasive. *Avera* provides special masters the discretion to make interim fee awards based on broader circumstances, including the occasion of an attorney's withdrawal from a case. *See generally Woods v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148, 154 (2012). Moreover, in numerous other similar circumstances special masters have permitted withdrawing attorneys to recover their fees even when the petitioner expects to go forward with her claim, whether as a *pro se* litigant or with new counsel. *See, e.g., Bear*, 2013 WL 691963, at \*4-5 (the fact that counsel is withdrawing from representation does not in itself justify an interim award, but is a persuasive factor to be entered into the analysis); *Edmonds v. Sec'y of Health & Human Servs.*, No. 04-87V, 2012 WL 1229149 (Fed. Cl. Spec. Mstr. March 22, 2012) (requiring counsel who have withdrawn from representation to wait until the conclusion of a case to receive fees would create a hardship that would in the future discourage counsel from representing petitioners in the Vaccine Program).

The remedial goals of the Vaccine Program, and the concomitant need for effective attorneys familiar with the Program to be available to help petitioners, are best served if withdrawing counsel who have otherwise represented a petitioner in a demonstrably able fashion are allowed to recover their fees before resolving the merits of a petitioner's underlying claim. I therefore find that the present circumstances of Mr. Homer's withdrawal do not disqualify him from receiving an interim fee award.


IV.   Calculation of Fee Award

All that remains to be done is to calculate the proper amount for the fee award. Normally, the lodestar method (in which a proper hourly rate for the attorney's services is multiplied by the

reasonable hours expended) is used to determine fee awards in the Vaccine Program. *Avera*, 515 F.3d at 1347-48, *citing Blum v. Stenson*, 465 U.S. 886, 888 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 432-33 (1983).[14] Once the Special Master calculates a reasonable hourly rate and the number of hours reasonably expended, he/she may then adjust the fee award upward or downward based on other specific findings. *Avera*, 515 F.3d at 1348.

In this case, however, Respondent has not specifically challenged either Mr. Homer's requested hourly rate or the number of attorney hours claimed. (Fee App. Opp. at 4 n.3).[15] I have also conducted my own review of the submitted fee application, and I do not find that the requested hours or billing rates are objectionable or otherwise should be revised.

## CONCLUSION

It is appropriate to make an interim award of fees and costs to the Petitioner at this time. The amount of the award is the sum of the amounts requested in counsel's original fee application, plus the supplemental motion, for a total of **$17,510.01**.[16] The award shall be made in the form of a check made payable jointly to Petitioner and the law firm of Conway, Homer & Chin-Caplan, P.C.[17]

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[14] The lodestar method provides that a reasonable fee is calculated by first determining "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433-34. If hours could not have been properly billed to one's client, they cannot be billed to one's adversary. *Id*. Discretion is granted to the special master to use his experience to determine what a reasonable rate is. *Saxton*, 3 F.3d at 1521 (Fed. Cir. 1993). The special master is not required to make a line by line evaluation of the attorney fee application. *Riggins v. Sec'y of Health & Human Servs.*, No. 99-382V, 2009 WL 3319818, at *4 (Fed. Cl. Spec. Mstr. June 15, 2009).

[15] Respondent objects only to $280 of the total fee application. (Fee App. Opp. at 4 n.3). But Respondent has not articulated the basis for this objection, or even what subcomponent of the billing records it reflects. Accordingly, because this particular objection is inadequately substantiated, I will allow this sum to be recovered over Respondent's objection.

[16] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing (either jointly or individually) notices renouncing their respective rights to seek review.

[17] As noted above, Petitioner's counsel has also filed a motion to withdraw as counsel of record in this case, to which Respondent has not objected or otherwise responded. I am prepared to grant that motion, but only after existing counsel either files any remaining medical records relating to Ms. Iannotti's claim of which he is aware, or files a certification that all such records in his possession have already been filed.